UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTIAN CARUSO,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 25-cv-03395-JSC<br><br>**ORDER RE: MOTION FOR SUMMARY DENIAL OF THE PETITION TO QUASH AND ENFORCEMENT OF THE IRS SUMMONS TO APPLE, INC.**<br><br>Re: Dkt. No. 17 |

Petitioner sues the United States to quash an Internal Revenue Service ("IRS") summons to Apple, Inc. ("Apple") for Petitioner's records. (Dkt. No. 1.) Now pending before the Court is the United States' motion for summary denial of the petition to quash and for enforcement of the IRS summons to Apple. (Dkt. No. 17.) After careful consideration of the parties' briefing, and having had the benefit of oral argument on August 28, 2025, the Court GRANTS the United States' motion to deny the petition to quash and enforce the IRS summons.

**BACKGROUND**

The IRS received a request for exchange of information ("EOI Request") pursuant to the Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income ("U.S.-Swiss Treaty"). (Dkt. No. 17-1 ¶¶ 3–4.)[1] Patricia Thomas, the IRS Program Manager of the Exchange of Information Office in the Large Business and International Division ("LB&I"), reviewed the EOI Request. (*Id.* ¶¶ 1–2.) Program Manager Thomas testifies that, according to the EOI Request, IQ Global Consulting Sagl in Liquidation ("IQ Global"), Estrea Property Ltd. ("Estrea"), Andrea Tirelli, and Petitioner are

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

under civil examination and criminal investigation by Switzerland's Federal Tax Administration ("FTA") for income tax evasion. (*Id.* ¶ 5.) The FTA suspects IQ Global and Estrea manage a Swiss investment fund, Pendragon Fund Sicav-Sif S.C.A. ("Pendragon Fund"), without properly declaring and paying tax on its revenues in Switzerland, and that Petitioner planned IQ Global's and Estrea's distribution of dividends and is thereby implicated in their suspected tax evasion. (*Id.* ¶¶ 7–8.) Program Manager Thomas testifies that Swiss "authorities obtained evidence that [Petitioner] used Apple's services to exchange messages and documents." (*Id.* ¶ 9.) According to Program Manager Thomas, the FTA requested Apple's records for Petitioner because such information "may help establish the authenticity of [] documents" in the FTA's possession and is "needed to conduct a transfer pricing analysis to determine how the revenues under investigation should have been accounted for properly." (*Id.* ¶¶ 6, 10–11.)

Following her review, Program Manager Thomas determined the EOI Request was proper under the U.S.-Swiss Treaty. (*Id.* ¶ 12.) Shelby D. Johnson, an IRS Tax Law Specialist in LB&I, then issued an IRS summons to Apple for "subscriber and payment information sought in the EOI Request for account(s) related to" Petitioner and gave Petitioner notice of the summons. (Dkt. No. 1-1 ¶ 5; Dkt. No. 17-2 ¶¶ 1, 3–4.). The summons seeks information including:

> 1. Subscriber or customer name;
> 2. Subscriber or customer address;
> 3. Local and long distance telephone connection records;
> 4. Records of session times and durations, including those of the internet;
> 5. Length of service (including start date) and types of service utilized;
> 6. Telephone or instrument number or other subscriber/customer number or identity, including any temporarily assigned network address, such as an Internet Protocol address; and
> 7. Means and source of payment for such service (including any credit card or bank account number).

(Dkt. No. 1-1 at 3.) Petitioner now seeks to quash the summons (Dkt. No. 1), and the United States moves for summary denial of the petition and to enforce the summons (Dkt. No. 17).

## DISCUSSION

The U.S.-Swiss Treaty facilitates the exchange of information between the tax authorities of the United States and Switzerland. *See* Convention Between the United States of America and

the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, U.S.-Switz., Oct. 2, 1996, S. Treaty Doc. No. 105-8, as amended by the Protocol, Sept. 23, 2009, S. Treaty Doc. No. 112-1.  Article 26 requires the United States to "use its information gathering measures to obtain" information requested by Switzerland, even if the United States "may not need such information for its own tax purposes." *Id.* at art. 26(4).  Because the U.S.-Swiss Treaty is "part of the law of the United States," the IRS is "bound by law to employ the same procedures to obtain information requested by [Switzerland] pursuant to the Treaty as it would employ in the investigation of a domestic tax liability." *Lidas, Inc. v. United States*, 238 F.3d 1076, 1081 (9th Cir. 2001).  One such procedure is the IRS's authority to examine records pursuant to a summons. *See* 26 U.S.C. § 7602(a).

"Section 7609(b)(2)(A) permits a taxpayer identified in an IRS summons served on a third party recordkeeper to begin a proceeding to quash the summons; in turn, the government may seek to compel compliance." *Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999).  To defeat a petition to quash and compel compliance, the IRS must establish "good faith" by showing the summons: (1) is issued for a legitimate purpose; (2) seeks information that may be relevant to that purpose; (3) seeks information not already in the IRS's possession; and (4) satisfies all of the administrative steps set forth in the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57–58 (1964).  "Courts have consistently recognized that declarations or affidavits by IRS directors or agents generally satisfy the *Powell* requirements." *Lidas, Inc.*, 238 F.3d at 1082. "The [government's] burden is minimal because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *Crystal*, 172 F.3d at 1144 (internal quotation marks and citation omitted).  Indeed, "[e]nforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses." *Id.* (internal quotation marks and citation omitted).

Once the government has established the *Powell* elements, the petitioner bears a heavy burden to show the IRS's bad faith or the summons's improper purpose. *Id.*  To meet that burden, the petitioner "must allege specific facts and evidence to support his allegations of bad faith or improper purpose." *Id.* (internal quotation marks and citation omitted).

3

"The same test applies where the IRS issues a summons at the request of a tax treaty partner." *Lidas, Inc.*, 238 F.3d at 1082 (citing *United States v. Stuart*, 489 U.S. 353 (1989)). "In such case, the IRS need not establish the good faith of the requesting nation." *Id.* Instead, "[s]o long as the IRS itself acts in good faith [under *Powell*] . . . and complies with applicable statutes, it is entitled to enforcement of its summons." *Id.* (quoting *Stuart*, 489 U.S. at 370).

## I.      THE IRS HAS MET ITS PRIMA FACIE BURDEN

First, the IRS issued the summons for the legitimate purpose of meeting the United States' treaty obligations to the Swiss government. Program Manager Thomas determined the EOI Request is proper under the U.S.-Swiss Treaty. (Dkt. No. 17-1 ¶ 12.) "Complying with a treaty partner's proper request is a legitimate purpose." *Zhang v. United States*, No. 21-cv-04655-CRB, 2021 WL 6122922, at *3 (N.D. Cal. Oct. 28, 2021), *aff'd*, No. 21-17093, 2022 WL 14010799 (9th Cir. Oct. 24, 2022); *see also Maxcrest Ltd. v. United States*, 205 F. Supp. 3d 1099, 1103 (N.D. Cal. 2016) (finding "purpose of meeting the treaty obligations" legitimate), *aff'd*, 703 Fed. App'x 536 (9th Cir. 2017).

Second, the summons seeks the information in Switzerland's EOI Request, which may be relevant to determine Petitioner's compliance with Swiss tax laws. Program Manager Thomas attests to a "reasonable basis to believe that the requested information, if produced, may contain information relevant to the FTA's determination of the correct Swiss income tax and potential criminal tax liabilities of [Petitioner]." (Dkt. No. 17-1 ¶ 13.)

Third, Program Manager Thomas and Tax Law Specialist Johnson testify the IRS did not possess the sought-after records when it issued the summons. (*Id.* ¶ 17; Dkt. No. 17-2 ¶ 7.)

Fourth, Tax Law Specialist Johnson attests the IRS provided Petitioner notice of the summons and took all administrative steps required by the Internal Revenue Code. (Dkt. No. 17-2 ¶¶ 3–4, 8.)

The IRS has therefore satisfied all four *Powell* elements and established its good faith in issuing the summons.

4

## II. PETITIONER FAILS TO ALLEGE FACTS AND EVIDENCE TO SHOW THE IRS'S BAD FAITH OR IMPROPER PURPOSE

As the IRS has met its prima facie burden, Petitioner bears the heavy burden of demonstrating the summons was issued in bad faith or with an improper purpose.

Petitioner contends the summons was issued in bad faith because the "Summons was issued for the improper purpose of aiding the Swiss government in a Criminal Investigation." (Dkt. No. 18 at 4.) Petitioner relies on 26 U.S.C. § 7602(d) and the U.S. Department of Justice Summons Enforcement Manual, which prohibit the IRS from issuing a third-party summons when the IRS has referred the case to the Justice Department for prosecution. (*Id.* at 6.) According to Petitioner, because the summons would be unenforceable if the IRS had referred an investigation into Petitioner to the U.S. Justice Department for a criminal investigation, the existence of a Swiss criminal investigation demonstrates the IRS's bad faith in issuing this summons. But "Congress did not intend to make the enforcement of a treaty summons contingent upon the foreign tax investigation's not having reached a stage analogous to a Justice Department referral." *Stuart*, 489 U.S. at 363. Instead, the "only restriction" imposed by Section 7602(d) is the statutory restriction: "[T]he IRS may neither issue nor move to enforce a summons if the IRS has referred the summonee's case to the Justice Department." *United States v. Abrahams*, 905 F.2d 1276, 1281 n.4 (9th Cir. 1990), *rev'd on other grounds*, *United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997). So, a Swiss criminal investigation does not demonstrate the IRS's bad faith.

Petitioner also argues the requested information is not relevant to a legitimate purpose, is "overly broad," and "appears to be part of an impermissible fishing expedition" because "the IRS has failed to show how the information bears any relation to the taxation laws of either the United States or Switzerland." (Dkt. No. 18 at 7.) The Court disagrees. An IRS summons "allow[s] the IRS to obtain items of even *potential* relevance to an ongoing investigation," as long as those items might "throw light upon the correctness of" a petitioner's tax return. *United States v. Arthur Young & Co.*, 465 U.S. 805, 814–15 (1984) (internal quotation marks and citation omitted). Program Manager Thomas's declaration explains why the requested subscriber records may be relevant to the Swiss government's tax investigation, including because the information requested from Apple "may help establish the authenticity of the documents" in the FTA's possession,

5

which could "support offenses connected with the administration or enforcement of the Swiss taxes covered by the U.S.-Swiss Treaty," and is needed for the FTA to "conduct a transfer pricing analysis to determine how the revenues under investigation should have been accounted for properly." (Dkt. No. 17-1 ¶¶ 10–11.)  *See Maxcrest Ltd. v. United States*, 205 F. Supp. 3d at 1103 (concluding IRS summons for similar information, including "subscriber's name and address, the length of service utilized, telephone number or other identifying information, and the Internet Protocol address," was not overly broad and was potentially relevant to foreign country's tax investigation).

Petitioner has not alleged facts or evidence to show the IRS's bad faith or improper purpose.

### III.     EVIDENTIARY HEARING AND DISCOVERY

Petitioner also "requests an evidentiary hearing and limited discovery to evaluate the constitutionality of the Summons under *Powell* and Article 26." (Dkt. No. 1 ¶ 21.)  A taxpayer seeking to quash an IRS summons "is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith.  Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge."  *United States v. Clarke,* 573 U.S. 248, 254 (2014).  Following an evidentiary hearing, discovery may be warranted "if the trial court is not convinced that the summonses were issued for a proper purpose."  *United States v. Stuckey*, 646 F.2d 1369, 1374 (9th Cir. 1981).  But "discovery in a summary summons enforcement proceeding is the exception rather than the rule."  *United States v. Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975).

Petitioner does not allege facts and circumstances to warrant an evidentiary hearing or limited discovery.  Petitioner doubts Switzerland's EOI Request accurately described the Pendragon Fund's incorporation and registration and the status of Swiss criminal court proceedings, and argues the potential inaccuracies "would reflect bad faith on the part of the [Swiss FTA]." (Dkt. No. 18 at 8–9.)  However, "the IRS need not establish the good faith of the requesting nation."  *Lidas, Inc.*, 238 F.3d at 1082.  In fact, for a court to "look beyond a facially proper request to determine the true motivations of the requesting foreign government . . . would

run counter to what the Supreme Court said in *Stuart*." *Puri v. United States*, No. 21-55132, 2022 WL 3585664, at *1 (9th Cir. Aug. 22, 2022). In the absence of evidence suggesting the IRS itself acted in bad faith, Petitioner is not entitled to an evidentiary hearing or discovery.

Petitioner also alleges the United Kingdom's Data Protection Act of 2018 ("DPA") may grant him "rights to prevent or limit [Apple's] disclosure." (Dkt. No. 1 ¶ 20; Dkt. No. 18 at 9.) But Petitioner does not explain how potential DPA limitations on Apple's ability to share his data raise a plausible inference the IRS issued its summons in bad faith. Even if Petitioner had done so, "[t]he party relying on foreign law has the burden of showing that such law bars production." *United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981). Petitioner has not met his burden to show the DPA would bar Apple's response to the IRS summons issued pursuant to a U.S.-Swiss Treaty request.

So, the Court denies Petitioner's request for an evidentiary hearing and discovery.

## CONCLUSION

For the reasons explained above, the Court GRANTS the United States' motion and orders enforcement of the IRS summons.

This order disposes of Docket No. 17.

**IT IS SO ORDERED.**

Dated: August 28, 2025

JACQUELINE SCOTT CORLEY
United States District Judge